C. D. BROTHERTON, R. L. Brotherton and James R. Brotherton, a partnership, d/b/a Brotherton's Automotive, Plaintiffs in Error,

v.

Lloyd McWATERS, Defendant in Error.

No. 41682.

Supreme Court of Oklahoma.

Jan. 30, 1968.

**2**

Pickel & Pickel, Oklahoma City, for plaintiffs in error.

West, Procter & Moore, Oklahoma City, for defendant in error.

WILLIAMS, Justice.

This is an appeal from a judgment of the court below, sitting with a jury, in an action wherein plaintiffs sought to recover the amount of a certain check indorsed to them by defendant. On appeal, the parties appear in the same relative position as in the trial court and hereinafter will be referred to as there designated.

In their petition below, plaintiffs alleged that on February 8, 1964, defendant requested that they furnish, at reasonable prices agreed upon by the parties, labor and parts to repair defendant's diesel truck. Plaintiffs further alleged that in full payment of the balance remaining on such labor and parts after other sums had been paid, defendant indorsed and delivered to them a check in the amount of $690.00, payable to the order of defendant and drawn by a broker on a Colorado bank; that the drawer stopped payment on such check and defendant, although demand has been made upon him, has refused to pay the amount of such check; and, that plaintiffs were entitled to judgment against defendant for the amount of such check.

Defendant's answer generally denied plaintiffs' allegation, but admitted that defendant indorsed the check and that payment was stopped on such check. Defendant's answer further alleged that the repairs on his truck were undertaken without his permission; that the sum charged for the repairs included amounts for new parts, although plaintiffs actually made repairs with used parts; that the repair work was done in an unworkmanlike manner; and, that as a result of the manner in which the repairs were made, defendant's truck experienced mechanical difficulty which required the truck to be taken out of service and again repaired.

In their reply, plaintiffs denied all the allegations contained in defendant's answer.

At trial, the parties stipulated to admit into evidence the check in question herein. Defendant stipulated that by such check the plaintiffs had established a prima facie case and proceeded to present his defense to the action.

In summary, defendant testified that he was a trucker engaged in hauling produce to market, and while engaged in such business in February, 1964, his truck experienced mechanical failure in Colorado and had to be towed to Oklahoma City by a fellow trucker, a Mr. Green. Defendant stated that when they arrived in Oklahoma City he intended to take his truck to a particular firm and place it in storage until he decided what to do with it, but as

it was Sunday and such firm was closed, the truck was towed to the service station and garage of plaintiffs, with whom his friend, Mr. Green, was acquainted.

Defendant further testified that on the following morning after towing the truck into plaintiffs' garage, he returned to the garage and found plaintiffs pulling the truck into their service station, at which time he told plaintiffs he did not wish to repair the truck, but did agree to allow them to disassemble the diesel engine to determine if it were in sufficient condition to exchange for a rebuilt motor. Before the engine was completely disassembled, defendant went to his home in Arkansas, and, upon returning to Oklahoma City, stated that he found that plaintiffs had proceeded to repair the engine and informed him they then had expended $1860.00 in labor and parts on the truck for which he (defendant) must pay before the truck would be released to him. Some five or six weeks then elapsed before defendant obtained the necessary money to pay for the repairs of his truck, and in late March, 1964, he received the truck after indorsing and delivering to plaintiffs the check involved herein and paying the balance of the repair bill in cash. Defendant produced plaintiffs' repair bill which he maintained showed the full amount of $1981.08 he had paid.

After receiving the truck, defendant stated that he noticed that it was not running well, was producing little power, and that certain instrument gauges were not connected. He immediately drove the truck to another garage where the engine was tuned and the heat indicator was connected. He then identified certain repair bills, which were admitted in evidence over plaintiffs' objections, relating to repairs made on the truck within seven to eight months after plaintiffs' repairs were completed. In effect, defendant testified that these subsequent repairs were made on the same parts previously repaired or replaced by plaintiffs.

At the close of defendant's evidence, plaintiffs moved for a directed verdict on the ground that as the drawer of the check and not defendant had stopped payment thereof, defendant was not entitled to raise failure of consideration as a defense to the action. This motion was overruled and plaintiffs submitted their testimony in rebuttal.

James R. Brotherton, one of the plaintiffs and a partner in Brotherton Automotive, testified that he did the repair work on defendant's truck; that when he began the disassembling of the engine, defendant was present and aided him; that although defendant left Oklahoma City several days after the work began, he returned within one or two days and was shown the disassembled engine parts; that defendant authorized witness to have parts checked and repaired and to purchase necessary parts; and, that witness himself obtained some parts necessary for the repair. This witness further testified that many of the repairs defendant had made subsequent to plaintiffs' work were in the nature of preventive maintenance rather than being further repairs on work previously done by plaintiffs, although witness did admit that at least three of these subsequent repair bills were not for preventive maintenance.

On cross-examination, James R. Brotherton was asked to compare two copies of the repair bill and state which one reflected the total bill actually paid by defendant. The witness was then given until after the noon recess to total the two bills.

After noon recess, the witness testified that C. D. Brotherton had run the adding machine tapes on the two bills during the noon recess and thereafter such person was called to testify. Although both copies of the bill in evidence reflected the total sum of $1981.08, one bill actually totaled $1721.18 and the other totaled $1788.58. The witness explained that both of the above bills were

estimates made before completion of the work, that a new engine head in the amount of $150.00 which was not used in the repair work had been included in such estimates of the total bill, and that the amount actually paid by defendant was $1831.08, although no other evidence was submitted to prove this amount.

The case was then submitted to the jury on the question of whether plaintiffs properly repaired defendant's truck and a verdict was returned for defendant. Plaintiffs then moved for judgment notwithstanding the verdict, which was overruled. From the judgment entered on the jury verdict and the order overruling their motion for new trial, plaintiffs appeal.

In their first proposition for reversal, plaintiffs contend that the trial court erred in failing to grant their motion for directed verdict as there was no material issue of fact to be determined by the jury. Under this proposition, plaintiffs apparently are contending that as the drawer of the check, rather than defendant, stopped payment thereof, defendant became absolutely liable to pay the check in accordance with 12A O.S.1961, § 3-414, which provides, in pertinent part:

> (1) Unless the indorsement otherwise specifies (as by such words as "without recourse") every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder * * *."

Plaintiff continues by arguing this contention is valid regardless of whether they are holders or holders in due course as defined in our Commercial Code, 12A 1961, § 1-101 et seq.

We cannot agree with this contention.

Section 3-408, 12A O.S.1961, provides, again in pertinent part:

> "Want or failure of consideration is a defense as against any person not hav-

ing the rights of a holder in due course (Section 3-305) * * *." (Emphasis added.)

One of the requirements of being a holder in due course as defined in § 3-302 (a) is that a holder take the instrument for value. As applicable herein, § 3-303(a) provides that a holder takes for value "to the extent that the agreed consideration has been performed." Of course, the contention of the defendant herein is that the agreed consideration, i. e., the workmanlike repair of his truck, has not been performed.

■ However, it is our opinion that whether plaintiffs herein are holders in due course or merely holders makes no difference. As noted above, § 3-408 provides that the defense of failure of consideration is applicable to any person not having the rights of a holder in due course. Section 3-305, which defines the rights of a holder in due course, provides, inter alia, that a holder in due course "* * * takes the instrument free from * * * (2) all defenses of any party to the instrument *with whom the holder has not dealt.*" (Emphasis added.) As plaintiffs herein dealt with defendant, it is our opinion that even assuming they were holders in due course, they are not immune to the defense of want or failure of consideration as set forth in § 3-408.

■ Further, we have found no provision of our Commercial Code, and plaintiffs have cited none, which restricts the defense of want or failure of consideration to the drawer of a check or requires that an indorser, to take advantage of such defense, stop payment of a check himself. In our opinion the defense contained in § 3-408, except as restricted therein, is available to any person, i. e., drawer, payee, indorser, etc., in the chain of title.

■ Plaintiff's other propositions of error have either been answered by our discussion above or are based upon the con-

tention that the trial court erred in admitting certain repair bills relating to repairs made by third parties subsequent to the completion of the work done by plaintiffs. One basis of this contention is that these repair bills, to be admissible, were required to be identified by the parties who made the purported repairs.

These repair bills to which objection was made as heretofore set forth noted the work done, for whom the work was performed, the charges made for such work, and indicated such charges were paid. Defendant testified that he was present when the repair bills were made, that he oversaw the making of the repairs, and that he paid such bills. We are of the opinion such evidence was properly admitted by the trial court.

In this connection, plaintiffs in their second proposition also contend that the trial court erred in admitting such repair bills into evidence on the argued ground that such evidence tended to establish a counterclaim which had not been pleaded. The simple answer to this contention is that defendant presented such evidence for the jury (pursuant to § 3–408, supra) to consider as defensive matter only on his part and not as tending to prove a counterclaim. He, in fact, made no counterclaim, either in pleading or at trial.

Prior to the adoption of our Commercial Code, we held that when the consideration of an instrument was disputed and the evidence with reference thereto was conflicting, the issue was to be submitted to the jury. See Strickland v. Hetherington, Okl., 353 P.2d 138. The Commercial Code did not change this rule, and we see no error in the trial court's refusal to direct the verdict or enter judgment notwithstanding the verdict.

Judgment of the trial court is affirmed.

All Justices concur.