SECURITY STATE BANK, a corporation, Wishek, North Dakota, Plaintiff,

v.

John E. SCHULTZ, Defendant, Third-Party Plaintiff, and Appellant,

v.

Robert STREETER and Jerome Hageman, Third-Party Defendants and Appellees.

Civ. No. 10599.

Supreme Court of North Dakota.

May 31, 1984.

Carol Ronning Kapsner, of Kapsner & Kapsner, Bismarck, for defendant, third-party plaintiff, and appellant Schultz.

Charles Poches, Jr., Fort Pierre, S.D. (argued), and Gregory L. Bickle, of Bickle, Coles & Snyder, Bismark, for third-party defendant and appellee Streeter, and Jack R. Von Wald, Selby, S.D., for third-party defendant and appellee Hageman.

VANDE WALLE, Justice.

John E. Schultz appealed from a summary judgment in favor of third-party defend-

ants Robert Streeter and Jerome Hageman. We reverse the summary judgment and remand the case for a trial on the issues.

On July 18, 1979, Schultz borrowed $38,-000 from Security State Bank of Wishek. Schultz owned the Wishek Cheese Company, Inc., and the money was placed in that company's account. The note was executed by Schultz in his personal capacity because the Bank would not extend additional credit to the company. The obligation was carried on the books of the company and payments on the loan were made by the company directly to the Bank. In December 1979 Schultz began negotiating with Streeter for the sale of the company to Streeter. In early 1980 a purchase agreement was executed but was subsequently canceled. Negotiations for the sale of the company continued and on June 3, 1980, an oral agreement was reached for the sale of Schultz's stock in the company to Streeter and Hageman. A written "Hold Harmless Agreement" was executed by Schultz as part of the oral sale agreement.

In July 1982 the Bank began an action against Schultz to foreclose the mortgage given by Schultz to secure the note on property he personally owned. Schultz filed an answer and a third-party complaint alleging that the note was one of the liabilities Streeter and Hageman agreed to assume as part of the oral contract for the sale of stock in Wishek Cheese Company, Inc. Streeter and Hageman in their answer to the third-party complaint denied liability on the note. The district court severed the third-party action from the foreclosure action and subsequently granted Streeter and Hageman's motions for summary judgment on the third-party complaint. This appeal followed.

Schultz alleges as the only issue on appeal that the district court erred in finding that no genuine issue of material fact existed between the parties. The parties all agree that summary judgment may not be granted where there are genuine issues of fact. Rule 56(c), N.D.R.Civ.P., so provides. Schultz alleges that there is a genuine issue of material fact that is in dispute, i.e., whether or not Streeter and Hageman agreed to assume the obligation of Schultz to pay the note. Streeter and Hageman argue that as a matter of law the Hold Harmless Agreement releases them from any liability. The trial court, in its order granting the motions for summary judgment, did not rely upon the Hold Harmless Agreement urged by Streeter and Hageman as the basis for summary judgment; rather, the court observed that the promissory note was signed by Schultz personally and not in a representative capacity and that Wishek Cheese Company, Inc., was not responsible for payment of Schultz's personal note under our decision in *Farmers & Merch. Nat. Bank of Hatton v. Lee*, 333 N.W.2d 792 (N.D.1983), in which we affirmed a summary judgment in behalf of a bank. In that case the defendant contended he was not personally liable on the note because the note was actually an obligation of a corporation owned by the defendant. We held that where there was no indication on the note that it was signed in a representative rather than a personal capacity, the maker of the note was liable and that the trial court was correct in finding that there was no genuine issue of material fact that would preclude summary judgment.

Schultz does not contend he is not personally liable to the Bank on the note in question;[1] rather, he argues that—although as between the Bank and him, he is responsible for the payment of the note—as between Streeter and Hageman and himself, Streeter and Hageman agreed to

1. Schultz filed a return to the Bank's motion to sever its foreclosure action from the third-party action in which he indicated he did not oppose the motion and consented to an order severing the third-party action from the foreclosure action and requiring the third-party action to be tried prior to the Bank's foreclosure action.

Summary judgment was issued in the third-party action on June 23, 1983. Schultz did not contest a subsequent motion for summary judgment by the Bank in its foreclosure action and judgment was entered on September 21, 1983, and the real property has been sold pursuant to that judgment.

pay the note as part of the consideration for his sale and their purchase of the stock in the cheese company. We agree that the decision in *Farmers & Merch. Nat. Bank of Hatton v. Lee, supra,* is not controlling of the cause of action alleged in Schultz's third-party complaint against Streeter and Hageman. Although Schultz may be personally liable to the Bank on the note in question, it is nevertheless possible that Streeter and Hageman could agree to assume Schultz's obligation on the note as part of the consideration for Schultz's agreement to sell and their agreement to buy the stock in the cheese company. See Section 9–05–01, N.D.C.C. Streeter and Hageman, of course, deny that they agreed to assume the obligation. Depositions of Streeter, Hageman, and Schultz are part of the record. These depositions indicate a dispute exists as to whether or not Streeter and Hageman agreed to assume Schultz's obligation on the note. However, summary judgment should be granted only if, after viewing the evidence most favorable to the party against whom summary judgment is sought, it appears that there are no genuine issues as to any material fact and that the party seeking summary judgment is entitled to it as a matter of law. See, e.g., *Johnson v. Haugland,* 303 N.W.2d 533 (N.D.1981); *Albers v. NoDak Racing Club, Inc.,* 256 N.W.2d 355 (N.D.1977). Here, the evidence viewed most favorably to Schultz indicates that Schultz borrowed the money from the bank in his own name because the Bank would extend no further credit to the cheese company; that the money was deposited in the account of the cheese company; that payments on the note were made by the cheese company; and that Streeter and Hageman agreed to assume Schultz's obligation on the note as part of their consideration for the sale of his stock in the cheese company. Although Streeter and Hageman dispute some of that evidence, particularly Schultz's allegation that they agreed to assume his obligation on the note, that is a question of fact

to be determined by the trier of fact. Where, as here, an agreement is oral rather than written and thus must be proved by testimony of the parties, it would appear appropriate to avoid summary judgment and submit the disputed issues as to the terms of the contract to the trier of fact.

◼ Although we conclude that our decision in *Farmers & Merch. Nat. Bank ·of Hatton v. Lee, supra,* does not require nor justify summary judgment under the facts and issues of the instant case, Streeter and Hageman in their motion for summary judgment in the trial court and again in this appeal argue that as a matter of law the Hold Harmless Agreement entitled them to summary judgment on Schultz's third-party complaint. They urge that we conclude that the agreement, which also contains a "Release," protects them from any liability for the obligation at issue.

The Hold Harmless Agreement is the only portion of the agreement for the sale of stock in the cheese company that is in writing. We have examined that agreement and it obviously does not incorporate the entire agreement of the parties with regard to the sale of the stock in the cheese company. The consideration for the sale of the stock is part of the oral, not the written, agreement. Schultz urges that the assumption of his obligation on the note was part of the consideration for the sale. Streeter and Hageman deny that they assumed the obligation or even that they had any knowledge of the obligation until after the sale. Although it is possible for a written agreement, such as the Hold Harmless Agreement, to, as a matter of law, supersede any previous oral agreements the parties might have reached regarding the obligation in question [see Section 9–06–07, N.D.C.C.], we cannot conclude as a matter of law that the Hold Harmless Agreement does so in this case.[2] Once the terms of the oral agreement for the sale of the stock are determined by the trier of fact the effect of the Hold Harmless

---

**2.** Although questions concerning the application of the statute of frauds [Section 9–06–04, N.D.C.C.] and the parol evidence rule [Section 9–06–07, N.D.C.C.] were raised during oral argument

before this court, they were not urged as a basis for summary judgment at the trial court level or on appeal. The agreement to sell the stock was oral and the terms thereof have not been deter-

Agreement may need to be explained by extrinsic evidence. We cannot conclude that the Hold Harmless Agreement is sufficient, as a matter of law, to entitle Streeter and Hageman to summary judgment.

mined and the parol evidence rule does not prohibit the introduction of extrinsic evidence to explain an ambiguous writing. See, e.g., *Tal-*

The summary judgment is reversed and the case is remanded for trial.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.

*lackson Potato Co., Inc. v. MTK Potato Co.,* 278 N.W.2d 417 (N.D.1979). However, we have not considered these issues in this appeal.